IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IDA MAE BENNETT,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | ) Civil Action No. 3:05-1739-GRA-JRM<br>)<br>)<br>)<br>)<br>)<br>) **REPORT AND RECOMMENDATION**<br>)<br>)<br>) |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. The Plaintiff brought this pro se action pursuant to 42 U.S.C. §§ 402(e), 405(g), and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Supplemental Security Income ("SSI") and Disabled Widow's Benefits ("DWB").

**ADMINISTRATIVE PROCEEDINGS**

On June 19, 2003, Plaintiff applied for SSI and for DWB. Plaintiff's applications were denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held December 14, 2004, at which Plaintiff appeared and testified,[1] the ALJ issued a decision dated March 14, 2005 denying benefits. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff can perform.

---

[1] Plaintiff was represented by counsel at the hearing. See Tr. 42-43, 176.

Plaintiff was fifty-three years old at the time of the ALJ's decision. She has a high school equivalent education (GED) and an Associate's Degree in computer science. Plaintiff has no past relevant work. Plaintiff alleges disability since September 7, 1997, due to depression.

The ALJ found (Tr. 26-27):

1. The claimant meets all of the nondisability requirements for Disabled Widow's Insurance Benefits set forth in Section 202(e) of the Social Security Act. The claimant's prescribed period begins December 21, 1999 and ends January 30, 2007.

2. The claimant did not engage in substantial gainful activity[,] but performed work under the Pride for Work Program sponsored by the Department of Social Services since the alleged onset of disability through 2003.

3. The claimant's depression with an anxiety disorder are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, of Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments.

7. The claimant has the following residual functional capacity to perform medium work with the following restrictions; no public contact, occasional contact with co-workers, low stress, and only 1-2 step simple work instructions.

8. The claimant has no past relevant work (20 CFR §§ 404.1565 and 416.965).

9. The claimant is an 'individual closely approaching advanced age' (20 CFR §§ 404.1563 and 416.963).

> 10. The claimant has 'a limited education' (20 CFR §§ 404.1564 and 416.964), but later stated that she obtained a General Equivalency Diploma (GED).
>
> 11. Considering the types of work that the claimant is still functionally capable of performing in combination with the claimant's age, education and work experience, she could be expected to make a vocational adjustment to work that exists in significant numbers in the national economy. These jobs included employment as a cleaner (DOT 381.687-014) with 25,760 jobs in the state of South Carolina and two million jobs in the national economy, a stocker for a warehouse (DOT 922.687-058) with 36,200 jobs in the state of South Carolina and one million jobs in the national economy, and as a tagger with 2,520[] jobs in the state of South Carolina and 136,000 jobs in the national economy.
>
> 12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).
>
> 13. The claimant has no exertional limitations (20 CFR §§ 404.1545 and 416.945).

On May 6, 2005, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on June 17, 2005.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## DISCUSSION

Plaintiff appears to allege that the ALJ's decision is not supported by substantial evidence and the ALJ erred in not accepting the findings of Dr. Stephanie Thomas.[2] The Commissioner contends that the ALJ's decision is supported by substantial evidence.[3]

The ALJ's determination that Plaintiff could perform medium work which required no public contact, only occasional contact with co-workers, low stress, and one-to-two step simple work instructions is supported by substantial evidence. Plaintiff has presented no evidence that she suffered from any impairments that reduced her ability to perform the physical requirements of work. Medical records from Mount Vernon Hospital Clinic in Mount Vernon, New York from November 1994 to December 2002 reflect that Plaintiff was treated for an anxiety disorder and a benign left breast nodule. Tr. 111-114. On June 30, 2000, Plaintiff's treating physician noted that Plaintiff was able to work. Tr. 112.

---

[2]In her reply brief, Plaintiff for the first time appears to assert that the Commissioner is biased against African-Americans claimants. Even if this claim is properly before the court, Plaintiff has provided no evidence that the Commissioner's decision in her case was based on her race or was a result of bias on the part of the ALJ, Appeals Council, or Commissioner.

[3]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

On May 6, 2003, Plaintiff was treated in the emergency room at the Mount Vernon Hospital for chest pain. An electrocardiogram revealed normal sinus rhythm with evidence of non-specific T-wave abnormality. Plaintiff was treated and released. Tr. 115-120.

On August 19, 2003, Ms. Deborah Max, Deputy Director of Choice, a non-profit organization for Advocacy and Case Management Services, wrote that Plaintiff had been a recipient of mental health services since December 2000. Ms. Max stated that Choice was not a clinical service provider, but the agency assisted with applications for benefits and housing, as well as treatment referrals for individuals suffering with mental illness. Tr. 121.

On August 25, 2003, Dr. Ralph Nager, a psychiatrist who had treated Plaintiff since 1982, evaluated Plaintiff for recurrent major depression with symptoms of depressed mood. Dr. Nager noted that Plaintiff had limited understanding, limited concentration, problems with accepting and understanding supervisory instructions, and limited adaptability to changes around her. He also wrote that Plaintiff was able to handle her own personal grooming needs, prepare her own meals, take care of her own apartment, shop, and use public transportation (with difficulty). He opined that Plaintiff's recurrent periods of severe depressive symptoms impaired her ability to maintain work-related mental activities. He also opined that Paxil improved Plaintiff's symptoms. Tr. 122-128.

Although Dr. Nager noted the limitations discussed above, there is no indication that he or any other of Plaintiff's treating or examining physicians ever imposed any restrictions on her activities or opined that Plaintiff was permanently disabled due to her impairment. See Lee v. Sullivan, 945 F.2d 687, 693 (4th Cir. 1991)(finding that no physician opined that claimant was totally and permanently disabled supported a finding of no disability). Additionally, to the extent that Dr.

Nager's evaluation could be construed as an opinion of disability,[4] an ALJ is not bound by a conclusory opinion of disability or entitlement to benefits, even when rendered by a treating physician, since the issue of disability is the ultimate issue in a Social Security case and that issue is reserved for the Commissioner.  See 20 C.F.R. § 404.1527(e)(1); Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027 (10th Cir. 1994); see also Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)(statements that a claimant could not be gainfully employed are not medical opinions, but opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner); King v. Heckler, 742 F.2d 968 (6th Cir. 1984); Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir.1984).  Additionally, the ALJ's decision to reject the opinion of Dr. Nager to the extent it was based on Plaintiff's subjective complaints is supported by substantial evidence.  The ALJ discounted Plaintiff's credibility based on Plaintiff's lack of compliance in taking medications, her ability to work through a Department of Social Services Program for nine years despite her impairment, and her daily activities.

---

[4]Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1988), and Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986).  In those cases, the court emphasized the importance of giving great weight to the findings of the plaintiff's treating physician. See also Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983).  The court in Mitchell also explained that a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."  An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled.  DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

The Commissioner is authorized to give controlling weight to the treating source's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2).  The Court in Craig found by negative implication that if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589.

On November 24, 2003, Plaintiff was treated in the emergency room at the Medical University of South Carolina for complaints of chest pain. Tr. 149-156. The examining physician indicated that Plaintiff's only medication was Paxil for her history of depression with panic attacks. Tr. 151. An electrocardiogram was negative and revealed no evidence of cardiac damage. Tr. 160. Plaintiff went back to the emergency room on January 14, 2004, because she had been out of her prescribed medication (Paxil) for one month. A prescription for Paxil was given to Plaintiff and an appointment with Mental Health was made. Tr. 166-167.

Plaintiff was examined at the request of the State agency by Dr. Stephanie Thomas, a psychiatrist, on July 22, 2004. Tr. 168-173. Plaintiff reported that she began having panic attacks in 1996, her attacks initially improved after she began taking Paxil, but her symptoms waxed and waned after that time. Tr. 169. She stated that she had recent improvement in her symptoms after her medication was changed to Prozac and Ambien. Tr. 169. Plaintiff reported that she spent her days doing housework and reading. Tr. 170. Dr. Thomas noted that although Plaintiff had some improvement in her symptoms with medication management, she continued to have significant symptoms which limited her functioning. Tr. 171. Dr. Thomas, however, opined that Plaintiff was about to perform simple tasks and remember short instructions. Tr. 172.

The ALJ's determination is also supported by the finding of the State agency medical consultant. See 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."). On September 23, 2003, Dr. Joseph Dambrocia, a psychologist, reviewed Plaintiff's records and completed a Psychiatric Review Technique Form. Tr. 129-139. Dr.

Dambrocia opined that Plaintiff's depression and anxiety disorder caused a slight restriction of daily living activities; caused moderate difficulties in maintaining social functioning; and often caused deficiencies in maintaining concentration, persistence, or pace. Tr. 139. He also completed a Mental Residual Functional Capacity Assessment in which he concluded that Plaintiff was able to understand and remember simple instructions, sustain attention and concentration for simple tasks, and maintain adequate activities of daily living. Dr. Dambrocia noted that Plaintiff had some improvement with medication and opined that a low contact setting might be beneficial for her. Tr. 146.

The ALJ's determination that Plaintiff was not credible to the extent that she claimed she was precluded from performing all substantial gainful activity is supported by substantial evidence. As discussed above, Plaintiff's medical records support the ALJ's decision. Plaintiff's treatment was conservative and resulted in improvement in her symptoms. She did not require hospitalizations for her impairment. Further, inconsistencies in the record undermined Plaintiff's credibility. Plaintiff testified at the hearing that she had very limited daily activities and did not do any housework or cooking. Tr. 189-192. In her "Function Report" dated July 16, 2003, however, Plaintiff reported that she fed her cats, prepared meals every other day, and did housework. Tr. 79-81. On July 22, 2004, Plaintiff reported to Dr. Thomas that she spent her days reading and doing housework. Tr. 170.

Plaintiff appears to allege that the ALJ erred by finding that she had not been diagnosed with a mental illness. Contrary to this argument, the ALJ discussed Plaintiff's mental health diagnoses and treatment and specifically found that Plaintiff had the severe impairment of depression with an anxiety disorder (Tr. 22, 26). The mere presence of impairments, however, does not warrant a finding by an ALJ that a plaintiff is "disabled" within the meaning of the Social Security Act. Instead, Plaintiff had the burden to show that her impairments were so functionally limiting as to

8

preclude her for performing any substantial gainful activity for at least twelve consecutive months. See 42 U.S.C. § 423(d)(1)(A); Barnhart v. Walton, 535 U.S. 212 (2002); 20 C.F.R. § 404.1509. The ALJ's finding that Plaintiff's impairment reduced her mental RFC, but did not render her "disabled" is supported by substantial evidence, as discussed above. The ALJ included the non-exertional limitations in his hypothetical to the VE, in response to which the VE identified a significant number of jobs which Plaintiff could perform.

Plaintiff also alleges that the ALJ erred by disregarding the medical evidence submitted by the Commissioner's doctor. She claims that this physician found that her recurrent major depressive disorder and panic attack disorder with agoraphobia resulted in her having an "inability to function everyday life." Complaint at 3-4. In her January 31, 2006 pleading, Plaintiff appears to identify the physician discussed in the complaint as Dr. Thomas. Contrary to Plaintiff's argument, however, Dr. Thomas did not find that Plaintiff was unable to function, but instead Dr. Thomas opined that Plaintiff could perform simple tasks and remember short instructions. The ALJ acknowledged that Dr. Thomas diagnosed Plaintiff with depression and anxiety, found that this impairment was severe, and found that Plaintiff's impairment reduced her mental RFC as discussed above.

## CONCLUSION

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a

plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, <u>Blalock v. Richardson</u>, <u>supra</u>.  The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion.  <u>Shively v. Heckler</u>, <u>supra</u>.  It is, therefore,

RECOMMENDED that the Commissioner's decision be affirmed.

Respectfully submitted,

Joseph R. McCrorey
United States Magistrate Judge

October 31, 2006
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**